1  Stan D. Blyth, #166938
   sdb@lrplaw.net
2  Kimberly L. Mayhew #199105
   klm@lrplaw.net
3  LANG, RICHERT & PATCH
   Post Office Box 40012
4  Fresno, California 93755-0012
   (559) 228-6700 Phone
5  (559) 228-6727 Fax

6  Daniel D. Domozick, #206976
   ddomozick@domolaw.net
7  33977 Chardon Road, Suite 100
   Willoughby Hills, Ohio 44094
8  Phone: 216-586-6020
   Fax: 216-586-6021

9

10  Attorneys for Plaintiff, CORBIN W. MARR

11            **THE UNITED STATES DISTRICT COURT**

12        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 13 CORBIN W. MARR, individually and derivatively on behalf of PIPE AND PLANT SOLUTIONS, INC., a California corporation, | Case No. |
| 14 | |
| 15        Plaintiff, | **VERIFIED COMPLAINT** |
| 16 vs. | **DIRECT CLAIMS FOR:** |
| 17 PROVEN MANAGEMENT, INC.; a California corporation; WILLIAM J. GILMARTIN IV; ALAN VARELA; WILLIAM J. GILMARTIN III, AND SEWERAI CORPORATION, a Delaware corporation, | (1) **BREACH OF FIDUCIARY DUTY;** (2) **CONVERSION;** (3) **UNJUST ENRICHMENT;** (4) **ACCOUNTING;** (5) **DECLARATION OF RIGHTS;** (6) **FRAUD;** (7) **NEGLIGENT MISREPRESENTATION;** (8) **BREACH OF CONTRACT;** (9) **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND** (10) **UNFAIR BUSINESS PRACTICES** |
| 20        Defendants. | |
| 22 -and- | |
| 23 PIPE AND PLANT SOLUTIONS, INC., a California corporation, | **DERIVATIVE CLAIMS FOR:** |
| 24        Nominal Defendant. | (11) **CORPORATE WASTE;** (12) **BREACH OF FIDUCIARY DUTY;** (13) **ABUSE OF CONTROL; AND** (14) **UNJUST ENRICHMENT** |
| | **(DEMAND FOR JURY TRIAL)** |

1

Case No          - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

Plaintiff CORBIN W. MARR ("**Plaintiff**" or "**Marr**"), individual and derivatively on behalf of PIPE AND PLANT SOLUTIONS, INC. ("**PPSI**," the "**Company**" or "**Nominal Defendant**") brings this action against Defendants WILLIAM J. GILMARTIN IV ("**Gilmartin**"), ALAN VARELA ("**Varela**") ;WILLIAM J. GILMARTIN III ("**Gilmartin Senior**") (collectively, "**Defendants**"); PROVEN MANAGEMENT, INC., a California corporation, ("**ProVen**"), and SEWERAI CORPORATION , a Delaware corporation, ("**Sewer AI**") and avers, as follows:

## PARTIES

1.      Plaintiff is an individual residing in New York, New York and is a current shareholder, as required under Federal Rule of Civil Procedure 23.1, and Director of PPSI and the former Vice President of Operations and Managing Partner of PPSI.  Although Marr is a resident of New York, he has had substantial and long term contacts with the State of California. Between November 2012 and June 2019, Marr made at least 52 trips to California and spent approximately 248 days in California working on PPSI business, including meeting with Defendants and employees of the Company, attending customer and vendor meetings, interviewing prospective employees and onboarding new employees, among other things. Plaintiff also reported California income, filed California tax returns from 2013-2018, paying California income tax based on income earned within California.

2.      Nominal Defendant PPSI is a California corporation with its principal place of business in Oakland, California.

3.      Defendant ProVen is a California corporation with its principal place of business in Oakland, California.

4.      Defendant Gilmartin is an individual residing in Burlingame, California and is the President and CEO of PPSI and a Director of and shareholder in PPSI.

5.      Defendant Varela is an individual residing in Napa, California and is a Director as well as the Secretary-Treasurer of PPSI, the President of ProVen and a shareholder in both PPSI and

ProVen.

6.      Defendant Gilmartin Senior is an individual residing in San Mateo, California and is a Director as well as the Executive Vice President of PPSI, the Vice President of ProVen and a shareholder in both PPSI and Pro Ven.

7.      Defendant Sewer AI is a Delaware corporation with its principal place of business located in Walnut Creek, California, and is registered in California to do business as a foreign corporation.

8.      At all relevant times, Defendants were agents of the remaining defendants, and in doing the acts alleged herein, were acting within the course of scope of such agency. Defendants ratified and/or authorized the wrongful acts of each of the other defendants. Defendants, and each of them, are individually sued as participants and as aiders and abettors in the improper acts, plans, schemes, and transactions that are the subject of this Complaint. At all relevant times, all defendants herein pursued a common enterprise, and common course of conduct to accomplish the wrongs complained of herein. The purpose and effect of the common enterprise, and common course of conduct complained of was, interalia, to benefit the Defendants personally to the detriment of PPSI and Marr, by engaging in tortious, fraudulent and other wrongful activities.

## JURISDICTION AND VENUE

9.      This is, in part, a suit to obtain relief for Plaintiff's direct causes of action for breach of fiduciary duties including a wrongful termination of Plaintiff, breach of contract, fraud, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, conversion, unfair business practices, declaratory judgment and an accounting pursuant to California law and, in part, a suit bringing shareholder derivative claims for breach of fiduciary duties, corporate waste, unjust enrichment and abuse of power also under California law.

10.     As to Plaintiff's direct and derivative claims, this Court has subject matter jurisdiction under 28 U.S.C. §1332 (Diversity) as Plaintiff is a citizen of  New York, while Defendants, Nominal Defendant and ProVen are all California citizens, respectively, and Plaintiff's claimed

Case No            - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

1  relief exceeds $75,000.00, exclusive of costs and interest.  As to Sewer AI, Nominal Defendant

2  can bring an action against Sewer AI in this District under 28 U.S.C. §1332, pursuant to 28

3  U.S.C. § 1401, and, as such, Plaintiff may bring this action on the Nominal Defendant's behalf

4  in this District.

5  11.    Venue is proper in this District pursuant to, without limitation, 28 U.S.C. §1391(b),

6  because a substantial part of the property that is the subject of the action is situated in the

7  Northern District of California and the events, conduct, omissions, and intended harm giving

8  rise to the claims occurred in this District and pursuant to 28 U.S.C. §1401, which provides

9  that a shareholder may file a derivative suit "in any judicial district where the corporation

10  might have sued the same defendants." Federal Courts have interpreted Section 1401 as simply

11  a means of re-aligning the nominal corporate defendant before applying Section 1391 (See

12  *Johnson v. Masselli*, No. 2:07 CV 214 PPS, 2008 WL 111057, at *4 (N.D. Ind. Jan. 4, 2008)

13  ("Under§ 1401 ... venue in this case is proper ... where [the corporation] may have properly

14  initiated the suit against the ... defendants under §1391.") PPSI could file a direct suit against

15  Defendants and Sewer AI in this District pursuant to 28 U.S.C. §1391. As such, Plaintiff may

16  pursue this action on the Nominal Defendant's behalf in this District. For this reason,

17  Plaintiff's action is not a collusive one to confer jurisdiction that this Court would otherwise

18  lack as required for a derivative action pursuant to Federal Rule of Civil Procedure 23.1.

19  **FACTS AND BACKGROUND**

20  12.    This action arises from breaches of fiduciary duties, fraud, and misappropriations

21  among other things, committed by Defendants, the majority shareholders in PPSI, against

22  Plaintiff, a minority shareholder, Director, and an officer of the Company. This action also

23  arises from various tortious actions and breaches of contract perpetrated by Defendants against

24  Plaintiff and Defendants' usurpation of a corporate opportunity properly belonging to PPSI.

25  **FORMATION OF PPSI**

26  13.    PPSI operates a wastewater maintenance and cleaning business out of offices in

27  Oakland, California. PPSI previously maintained additional offices in Baltimore, Maryland,

28

4

Case No          - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

1  until February 28, 2020, and, until January 10, 2020, in New York City, New York. Its

2  customers are municipal agencies and utility owners primarily in California and on the East

3  Coast. PPSI is owned by four individual shareholders, Gilmartin, Varela, Gilmartin Senior and

4  Plaintiff.

5  14.    ProVen operates a general civil engineering and construction company within the

6  geographic territory of Northern California. On information and belief, the majority owners of

7  ProVen are Varela and Gilmartin Senior.

8  15.    PPSI was incorporated in 2011, although it did not commence as an independent

9  business entity until a later date. Marr began informally working for ProVen in October 2012.

10  At that time Marr and Gilmartin began building and operating PPSI's waste water maintenance

11  and cleaning business under ProVen's name. In November 2012, Marr met with Gilmartin,

12  Varela and Gilmartin Senior in California and agreed that Marr would become an employee of

13  ProVen until such time as PPSI could operate as an independent entity and, at that time, Marr

14  would be provided with an equity stake in PPSI and Marr and Gilmartin together would

15  operate PPSI. Marr thereafter formally began work for ProVen building PPSI's business so

16  PPSI could operate as an independent business entity.

17  16.    In a meeting in California on or about December 15, 2014, Defendants presented to

18  Plaintiff the proposed Bylaws of PPSI and certain corporate resolutions of PPSI granting

19  Plaintiff, among other things, a 15% equity interest in the Company as a shareholder (the

20  "**Resolution**"). Marr signed the Resolution as a Director of PPSI and the Vice President of

21  Operations of PPSI.  The Resolution granting Marr and the other individual Defendants share

22  ownership in the Company also contained language that falsely and fraudulently represented

23  that pursuant to a Restricted Stock Purchase Agreement that was to be entered into by and

24  between Defendants and Marr, that Marr had the right to acquire an additional 5% ownership

25  interest in PPSI. Defendants, however, failed to provide Marr with the promised Restricted

26  Stock Purchase Agreement and failed to permit him to purchase the additional 5% ownership

27  interest in PPSI, as Defendants had falsely and fraudulently represented and promised to Marr

28

Case No        - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

1  in writing.

2  17.    Gilmartin, Varela and Gilmartin Senior each own 28.33% of PPSI and through this

3  majority of stock ownership control PPSI.

4  18.    ProVen and PPSI share an office building in Oakland, California. In addition, to the

5  shared office space, ProVen provides and charges PPSI for labor, accounting, human resources

6  and legal services, among other things (the "**Shared Services**"). No accounting or

7  reconciliation of the ProVen charges to PPSI for the Shared Services was ever provided to

8  Marr, nor was Marr ever provided with a copy of a Shared Services Agreement between

9  ProVen and PPSI allowing Marr to ascertain how such charges were calculated. On

10  information and belief, no accounting or reconciliation of the ProVen charges to PPSI for the

11  Shared Services was ever provided to the Company.

12  19.    After Marr was provided with an equity interest in PPSI and became an Officer and

13  Director of the Company, PPSI began to operate independently of ProVen in most matters;

14  excepting that ProVen continued to provide PPSI with the Shared Services. Marr and Gilmartin

15  operated together and were jointly responsible for the East Coast and West Coast operations of

16  PPSI. Gilmartin, on many occasions, referred to Marr as a "Partner" in PPSI to actual and

17  potential customers, vendors, and employees of PPSI.

18  20.    Marr had a long history of operations experience in the construction industry prior to

19  obtaining an ownership interest in, and working for, PPSI. Marr was primarily responsible for

20  building the East Coast operations of PPSI from nothing to a multimillion-dollar revenue

21  stream for the Company and he played a significant role in building the West Coast operations

22  of the Company. Marr had a legitimate and reasonable expectation that he would continue to

23  operate the Company and be employed by the Company as Marr's employment with PPSI was

24  the sole basis for his income and the support of his family.

25  **MARR AND GILMARTIN AGREE TO EQUAL COMPENSATION**

26  21.    In a December 2014 meeting in Oakland, California, Marr, Gilmartin, Varela and

27  Gilmartin Senior agreed that Marr and Gilmartin jointly would run and be responsible for the

28

6

East Coast and West Coast operations of PPSI, it was further agreed that Varela and Gilmartin Senior would not work for or be compensated by PPSI.   While Gilmartin and Marr's compensation and benefits *largely* were equal at this time, Marr, Gilmartin, Varela and Gilmartin Senior specifically agreed in December 2016 that Gilmartin and Marr's total compensation, whether from salary, bonus and/or benefits, *would be absolutely equal* to each other and all distributions to shareholders would be *equivalent on a pro rata basis.*

22.     Since 2016 and thereafter, as agreed by Marr, Gilmartin, Varela and Gilmartin Senior, the total compensation on an annual basis paid to Gilmartin and Marr were equal, to Marr's knowledge, and in reliance on these promises, Marr continued to perform his duties as Vice President of Operations of PPSI.

23.     Beginning in late 2018, however, Gilmartin caused PPSI to pay himself salary, bonuses and benefits not paid to Marr, all to the detriment of Marr and the Company. For example, in late 2018, Gilmartin caused PPSI to purchase or lease a greater than $100,000.00 Mercedes automobile for Gilmartin's exclusive use. Again, contrary to the agreement between Marr, Gilmartin, Varela and Gilmartin Senior, no similar benefit or offsetting payment was provided to Marr. In or about July 2019, again in violation of the agreement between Marr, Gilmartin, Varela and Gilmartin Senior and to the injury of Marr and PPSI, Gilmartin caused PPSI to pay himself a bonus of $40,000.00 for no apparent legitimate business reason. When Marr later found out about the bonus and requested payment of the same bonus or an explanation for the payment if no bonus was to be paid to Marr, Gilmartin refused to pay Marr an equal bonus or provide any explanation why an equal bonus would not be paid Marr. On information and belief, Gilmartin further caused PPSI to make substantial payments to himself to pay his tax liabilities and to acquire, demolish and rebuild his residence in Burlingame California. No similar financial benefit was provided to Marr, all to the injury of Marr and PPSI.

24.     On information and belief, all of these actions were authorized and/or ratified by Varela and Gilmartin Senior. None of this information was disclosed to Marr at the time and was in fact falsely and fraudulently concealed from him. None of these payments were made equally

Case No          - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

available to Marr and such payments were improper and constituted a breach of fiduciary duty, among other things, to PPSI and Marr personally and to Marr's minority ownership interest in PPSI.

### DEFENDANTS USURP A CORPORATE OPPORTUNITY

25.    An essential and primary aspect of the Company's business is inspecting sewer pipes using video equipment. Marr and Gilmartin had long discussed making PPSI's video inspection process more efficient and less costly by developing in-house and implementing software for that purpose and for the benefit of PPSI.

26.    On information and belief, Gilmartin, with the knowledge and cooperation of the other Defendants, took PPSI's business opportunity and began developing it at the Company's offices, with Company resources, time and intellectual property, including proprietary videos of actual inspections performed by PPSI.

27.    On information and belief, Gilmartin, and other PPSI employees, including the other Defendants, often met with non-Company individuals to further this business opportunity on the Company's premises. When Marr asked Gilmartin about the status of the software development project, Gilmartin made dismissive comments and never informed Marr, a minority shareholder, Officer and Director of PPSI, the true facts regarding use of Company property and the expenditure of Company's resources to further the software development project and the plans to usurp this business opportunity at the cost and expense of PPSI.

28.    Sewer AI was incorporated in Delaware on February 19, 2019 and registered in California as a foreign corporation on September 6, 2019. None of this information was communicated to Marr. Nor was it communicated to Marr that Gilmartin intended to use PPSI property and resources to develop the inspection software for a new company instead of developing it for PPSI.  On Sewer AI's website, Gilmartin describes himself as the "co-founder" of Sewer AI hoping "to take sewer inspection efficiency to the next level."

29.    On information and belief, all of the aforesaid actions related to the corporate opportunity given to Sewer AI were authorized and/or ratified by Varela and Gilmartin Senior.

Case No         - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

30.     On information and belief, Sewer AI is fully operational and hiring employees and marketing the product that Gilmartin developed on Company time and using Company resources, including its intellectual property. Gilmartin and the other Defendants could have and should have developed this business opportunity for PPSI and its shareholders.

31.     PPSI had the capacity to develop the business opportunity wrongly developed for and given to Sewer AI by Gilmartin and the other Defendants.

## GILMARTIN SHUTS DOWN THE EAST COAST OPERATIONS OF PPSI AND TERMINATES PLAINTIFF

32.     In March 2019, and a very short time after Sewer AI was incorporated, Marr was notified by telephone by Gilmartin Senior and Varela that Defendants were closing the East Coast operations of PPSI, abandoning ongoing bid and contracted jobs on the East Coast and recalling all equipment to the West Coast. Marr was not consulted about this decision to close the East Coast operations of PPSI despite being a Director, the Vice President of Operations and 15% owner of the Company. Gilmartin Senior characterized this decision as a "punch to [Marr's] face." Despite the closing of the East Coast operations, Marr was not informed that he would be terminated and Marr expected to continue his employment with PPSI from New York, where he resided and where he was jointly responsible for raising two small children also residing there.

33.     When a shocked Marr requested an explanation for this surprise decision to close the East Coast operations of the Company, Gilmartin falsely told Marr that the East Coast operations were losing money. In fact, the East Coast operations of PPSI had been profitable for PPSI for many years. When Marr reviewed job cost financial documents, he discovered that charges made against PPSI's job costs, attributable to ProVen's charges for Shared Services, appeared excessive and that certain jobs were prematurely booked as losses. Marr requested additional information on the ProVen charges for the Shared Services assigned to PPSI; however, and his request was denied by Defendants. Marr also learned that certain jobs were prematurely posted as losses given the substantial likelihood that additional revenues were

Case No          - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

1    forthcoming from these jobs.

2    34.    In December 2019, just a short time after registering Sewer AI in California, Gilmartin

3    made a lowball offer to purchase Marr's 15% ownership interest in the Company based on a

4    intentionally inaccurate valuation of PPSI that Gilmartin and the other Defendants caused to be

5    performed. When Marr failed to formerly respond to the low-ball offer, Marr was informed via

6    email on January 6, 2020 that his employment was terminated and his health insurance

7    cancelled at the end of the month. At the time of his termination, Marr was earning in excess of

8    $250,000.00 a year in salary and benefits. Gilmartin also seized Marr's Company vehicle and,

9    on information and belief, gave it to a relative of another shareholder in the Company. PPSI

10   closed its New York operations effective January 10, 2020 with the closing of the entire East

11   Coast operations occurring on or about February 28, 2020. Marr was not given any information

12   regarding his status as a Director of the Company, and Marr has received no financial or

13   business information of the Company since his termination.

14   35.    All of the aforesaid actions taken individually by Gilmartin were authorized and/or

15   ratified by Varela and Gilmartin Senior. The closing of the East Coast operations of PPSI, the

16   usurpation of the Sewer AI business opportunity and the termination of Marr lacked legitimate

17   business reasons and were done solely to damage the Nominal Defendant, freeze out Marr,

18   diminish Marr's ownership interest in PPSI and damage Marr personally.

19   36.    All of these injuries to Marr were unique to him, as none of the other shareholders of

20   PPSI suffered any injury at all. Such actions constitute a wrongful termination of Marr and a

21   breach of Defendants' fiduciary duty, among other things, to Marr and PPSI, to their detriment

22   and to the injury of Marr's minority ownership interest in PPSI.

23   37.    After starting PPSI's business on the East Coast from scratch, building the West Coast

24   business and bringing in millions of dollars in revenue to PPSI, generating hundreds of

25   thousands of dollars in income, bonuses and benefits to Gilmartin, Defendants completed their

26   wrongful scheme to cheat Marr out of his employment, misappropriate Company assets and

27   opportunities and terminate Marr's legitimate ownership interest in PPSI. Marr currently is

28

Case No        - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

1   receiving no income from the Company businesses that he started with Gilmartin, Marr's
2   business partner and friend who earned great wealth from Marr's efforts, as did the other
3   Defendants.   Defendants, and each of them, have acted with malice and/or with reckless
4   disregard for the rights of Plaintiff, entitling Plaintiff and PSSI to an award of punitive
5   damages.

6   **DEMAND ALLEGATIONS**

7   38.   Plaintiff brings certain causes of action herein derivatively in the right of and for the
8   benefit of PPSI to redress injuries suffered and to be suffered by PPSI as a result of the
9   Defendant members of PPSI's Board of Directors, to wit: Gilmartin, Varela and Gilmartin
10  Senior ("**Defendant Directors**") and their breaches of fiduciary duty, abuse of control, and
11  gross mismanagement of the Company. Plaintiff and his counsel will adequately and fairly
12  represent the interests of PPSI in enforcing and prosecuting its rights in this action.

13  39.   Plaintiff was a shareholder of PPSI at the time of the wrongdoing complained of, has
14  continuously been a shareholder, and is a current shareholder.

15  40.   Based upon the Defendant Directors' acts and omissions in direct violation of their
16  fiduciary duties of care, good faith, honesty and loyalty, a pre-suit demand on the PPSI Board
17  of Directors to bring the claims asserted in this action is excused as a futile and useless act.
18  Defendant Directors personally profited from the wrongdoing alleged in this Complaint and it
19  was Defendant Directors who oversaw PPSI and its culture of self-dealing to the detriment of
20  PPSI described herein.

21  41.   Plaintiff has not made any demand on PPSI's Board of Directors to investigate and
22  prosecute the wrongdoing alleged herein. Such a demand is excused because: (i) making a
23  demand would be a futile and useless act as the Defendant Directors constitute a majority of
24  PPSI's directors and as such, the Defendant Directors are not able to conduct an independent
25  and objective investigation of the alleged wrongdoing; and (ii) the wrongful conduct of
26  Defendant Directors is not subject to protection under the business judgment rule. Under
27  such circumstances, the demand requirement is excused since making such a demand on

28

1    PPSI's Board of Directors would be futile (*Shields v. Singleton*, 15 Cal.App. 4th 1611 (1993).)

2    Furthermore, the Defendant Directors have demonstrated no intention of changing PPSI's

3    corporate culture, practices and policies which resulted in the wrongdoing conduct and damage

4    to PPSI alleged herein.

5    42.    Furthermore, the Defendant Directors profited substantially from maintaining an

6    environment and culture wherein the Defendant Directors sought personal gains over lawful

7    corporate operations.   The misconduct of the Defendant Directors resulted in the development

8    of a culture that led to the wrongful conduct at issue herein by the Defendant Directors in this

9    case, who lack the objectivity to judge their own misconduct.

10    43.    None of the Defendant Directors of PPSI are independent or disinterested. Defendant

11    Directors (consisting of a majority of the PPSI Board) cannot consider a demand  because their

12    decision to operate PPSI in violation of law is not a protected business decision and they all

13    face a substantial likelihood of liability for breaching their duty of loyalty.  All three Defendant

14    Directors have profited from, caused, ratified, and/or aided and abetted in the wrongful conduct

15    alleged herein. Defendant Directors further enriched themselves at the expense of the

16    Company to which they owed fiduciary duties of good faith, honesty, and loyalty. Thus,

17    Defendant Directors could not exercise independent objective judgment in deciding whether to

18    bring this action nor in vigorously prosecuting the claims alleged herein.

19    44.    The Defendant Directors cannot be relied upon to reach a truly independent decision

20    whether to commence  the demanded  action against  themselves and the officers responsible

21    for the misconduct alleged in this Complaint  because,  among other things,  PPSI's Board is

22    currently  dominated by the Defendant Directors,  who  constitute a majority of the Board and

23    were personally and directly  involved in the acts of mismanagement, abuse of control  and

24    waste  alleged and who each approved the actions complained of herein, and to whose

25    directives and views the PPSI Board acceded and will continue to accede.

26    44.    The Defendant Directors received personal and financial benefits while they caused or

27    permitted the misconduct detailed in this Complaint.  The Defendant Directors are biased and

28

Case No        - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

1    cannot appropriately and fairly adjudicate any demand on the PPSI Board.

**FIRST CAUSE OF ACTION (Direct)**
**(Breach of Fiduciary Duty)**
**(Against Defendants Gilmartin, Varela and Gilmartin Senior)**

45.    Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten.

46.    By virtue of Marr's minority ownership interest in PPSI, Defendants owe, and continue to owe, a fiduciary duty to Marr to act with the utmost good faith, trust, confidence and candor toward Marr, along with a duty to act with the highest degree of honesty and loyalty toward Marr and in the best interests of Marr.

47.    Defendants, in violation of their fiduciary duties to Plaintiff as alleged herein, by and among other things and without limitation, have:

     1)    Engaged in improper and/or unauthorized conduct by wrongfully terminating the employment of Marr without cause;

     2)    Engaged in improper and/or unauthorized conduct by failing to pay Marr equal salary, distributions, benefits, and/or profits;

     3)    Engaged in improper and/or unauthorized conduct by causing PPSI to pay Gilmartin excessive salary, distributions, benefits, and/or profits to the detriment of Marr and by causing PPSI to expend corporate resources to develop a PPSI corporate opportunity for Sewer AI;

     4)    Concealed from Marr the nature and extent of Defendants' unauthorized conduct and by causing and/or permitting excessive ProVen charges for Shared Services to dilute the profitability of PPSI jobs to the detriment of Marr and the usurpation of a corporate opportunity rightfully belonging to PPSI;

     5)    Conspired to deprive Marr of the benefit of his ownership interest in PPSI, by and among other things, providing Marr with an intentionally inaccurate valuation of PPSI, canceling profitable East Coast contracts, taking excessive salary, distributions, benefits and/or profits and making

Case No      - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

a low-ball offer for Marr's ownership interest in PPSI;

6) Excluded Marr from participation in the management and operations of PPSI without legitimate business purpose;

7) Engaged in improper and/or unauthorized conduct by closing the East Coast operations of PPSI without a legitimate business purpose to the detriment of Marr;

8) Engaged in fraudulent and improper conduct by failing to provide Marr with a Restricted Stock Purchase Agreement and failing to permit him to purchase an additional 5% ownership interest in PPSI and/or improperly disguising as Company loans certain compensation paid to Marr; and

9) Excluded Marr and/or concealed from Marr access to the true books and records of the Company.

48.   As a direct and proximate result of Defendants' breach of fiduciary duties, all of which occurred in California, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

**SECOND CAUSE OF ACTION (Direct)**
**(Misappropriation/Conversion)**
**(Against Defendants Gilmartin, Varela, Gilmartin Senior and ProVen)**

49.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten.

50.   Defendants have misappropriated and converted PPSI's funds, distributions and/or profits for Defendants and ProVen's use and benefit.

51.   As a direct and proximate result of Defendants and ProVen's misappropriation and conversion, all of which occurred in California, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

/////

14

### THIRD CAUSE OF ACTION (Direct)
### (Unjust Enrichment)
### (Against Defendants Gilmartin, Varela, Gilmartin Senior and ProVen)

52.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten.

53.     Defendants and ProVen have been unjustly enriched by their wrongful conduct as alleged herein.

54.     As a direct and proximate result of Defendants and ProVen's unjust enrichment, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

### FOURTH CAUSE OF ACTION (Direct)
### (Accounting)
### (Against Defendants Gilmartin, Varela Gilmartin Senior and Nominal Defendant)

55.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten.

56.     As a fiduciary, by virtue of Defendants being the majority shareholders in PPSI, Defendants have a duty to account to Marr for all sums of money and/or assets and/or distributions and/or real property of PPSI.  As such, Plaintiff is entitled to a detailed accounting by Defendants and the Nominal Defendant.

WHEREFORE, Plaintiff prays for relief as set forth below.

### FIFTH CAUSE OF ACTION (Direct)
### (Declaration of Rights)
### (Against Defendants Gilmartin, Varela and Gilmartin Senior)

57.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten herein.

58.     There exists a dispute between Plaintiff and Defendants as to their rights, obligations, status, and legal relations in regard to PPSI.

59.     Plaintiff is entitled to a declaration of the rights, obligations, status, and legal relations

Case No          - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

of the parties.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SIXTH CAUSE OF ACTION (Direct)
### (Fraud)
### (Against Defendants Gilmartin, Varela and Gilmartin Senior)

60.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten.

61.   Defendants' misrepresentations and omissions as set forth herein regarding the Restricted Stock Purchase Agreement, to be entered into by and between Defendants and Marr, under which Marr was to have the right to acquire an additional 5% ownership interest in PPSI, Marr's entitlement to equal compensation and benefits, the reasons for closing PPSI's East Coast operations, the development of software for Sewer AI using Company resources and the usurpation of this corporate opportunity, the purported value of PPSI and the cost of Shared Services attributable to PPSI's jobs were all material.

62.   The representations were false when made and Defendants made the misrepresentations with the knowledge of their falsity and/or with no intention of fulfilling such misrepresentations. All of these misrepresentations were made in California. Defendants made the misrepresentations and omitted to make disclosures maliciously and with the intent for Plaintiff to rely upon the misrepresentations.

63.   Plaintiff reasonably relied on the misrepresentations to his detriment.

64.   As a direct and proximate result of Defendants' fraudulent misrepresentations and omissions, and Plaintiff's reliance thereon, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

/////

/////

Case No          - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

## SEVENTH CAUSE OF ACTION (Direct)
### (Negligent Misrepresentation)
### (Against Defendants Gilmartin, Varela and Gilmartin Senior)

65.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten.

66.     Defendants failed to exercise reasonable care in ascertaining the accuracy of the representations made to Plaintiff, as alleged herein, and/or in communicating the representations as alleged herein to Plaintiff. All of the misrepresentations by Defendants were made in California.

67.     Plaintiff reasonably relied upon the misrepresentations to his detriment.

68.     As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## EIGHTH CAUSE OF ACTION (Direct)
### (Breach of Contract)
### (Against Defendants Gilmartin, Varela and Gilmartin Senior)

69.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten.

70.     The parties' agreement that Marr's and Gilmartin's total compensation, whether from salary, distributions, bonus and /or benefits would be equal to each other is a contract formed by offer, acceptance, and consideration. The contract was made in California.

71.     Marr has performed all of his obligations under the contract and all conditions precedent have been satisfied.

72.     As alleged herein, Defendants have breached the contract and failed to exercise their duty of good faith and fair dealing toward Marr.

73.     As a direct and proximate result of Defendant's breach of contract, Marr has suffered, and will continue to suffer, damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

/////

Case No        - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

## NINTH CAUSE OF ACTION (Direct)
### (Breach of implied Covenant of Good Faith and Fair Dealing)
### (Against Defendants Gilmartin, Varela and Gilmartin Senior)

74.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten

75.   California law implies a covenant of good faith and fair dealing in all contracts between

parties entered into in the State of California

76.   As a result of the actions of Defendants, and each of them, set forth hereinabove, said

Defendants have violated the implied covenant of good faith and fair dealing contained in the

contract between Plaintiff and Defendant, as against Plaintiff, and as a result thereof, Plaintiff

is entitled to damages as prayed.

77.   The actions of Defendants as hereinbefore described in violation of said implied

covenant of good faith and fair dealing have caused Plaintiff to suffer damages according to

proof at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## TENTH CAUSE OF ACTION (Direct)
### (Unfair Business Practices)
### (Against Defendants Gilmartin, Varela and Gilmartin Senior)

78.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten.

79.   By reason of Defendants, fraudulent, deceptive, unfair, and other wrongful conduct as

herein alleged, Defendants have violated California Business and Professions Code section

17200 et seq. by consummating an unlawful, unfair, and fraudulent business practice, designed

to deprive Plaintiff of the equal payment of compensation in violation of Labor Code Sections

2926 and 206.

80.   By reason of the foregoing, Plaintiff has suffered and continues to suffer damages in a

sum which is, as yet unascertained. Plaintiff will ask leave of court to amend this Complaint

when the true nature and extent of damages have been ascertained.

Case No         - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

WHEREFORE, Plaintiff prays for relief as set forth below.

## ELEVENTH CAUSE OF ACTION (Derivative)
### BREACH OE FIDUCIARY DUTY
#### (Against the Defendant Directors)

81.    Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

82.    Defendant Directors were and are required to use their abilities to control and manage PPSI in a fair, just and equitable manner in order to ensure that the Company complied with applicable laws and contractual obligations, to refrain from abusing their positions of control, and not to favor their own interests at the expense of PPSI. Defendants violated their fiduciary duties to PPSI, including without limitation their duties of care, good faith, honesty, and loyalty.

83.    The wrongful conduct particularized herein was not due to an honest error in judgment, but rather to Defendants' gross mismanagement, bad faith and/or reckless disregard of the rights and interests of PPSI, and its shareholders and for acting without the reasonable and ordinary care which they owed the Company.

84.    As a result of the foregoing, Defendant Directors have participated in harming PPSI and have breached fiduciary duties owed to Nominal Defendant. Defendant Directors knowingly participated in each of the alleged breaches of their fiduciary duties.

85.    By reason of the foregoing, PPSI has sustained and will continue to sustain damages and injuries for which it has no adequate remedy at law.

WHEREFORE, Plaintiff prays for relief as set forth below.

/////

/////

/////

Case No          - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

## TWELFTH CAUSE OF ACTION (Derivative)
### ABUSE OF CONTROL
### (Against the Defendant Directors)

86.     Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

87.     By virtue of their positions and financial holdings in PPSI, Defendant Directors exercised   control   over the Company and its operations, and owed duties   as controlling persons to PPSI not to use their positions of control within the Company for their own personal interests and contrary to the interest  of PPSI.

88.     Defendant Directors' conduct amounts to an abuse of their control of PPSI, in violation of their obligations to the Company.   Defendant Directors knowingly participated in in their abuse of control.

89.     As a result of Defendants' abuse of control, PPSI has sustained and will continue to sustain damages and injuries for which it has no adequate remedy at law.

WHEREFORE, Plaintiff prays for relief as set forth below.

## THIRTEEN CAUSE OF ACTION (Derivative)
### CORPORATE WASTE
### (Against the Defendant Directors)

90.     Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

100.     As alleged in detail hereinabove, Defendant Directors had a fiduciary duty to exercise good faith and diligence in the administration of the affairs of PPSI and in the use and preservation of its property and assets, and the highest obligation of fair dealings. Defendants also wasted PPSI corporate assets, for example, the Defendants diverted corporate assets that were specifically intended for operations for other improper corporate purposes, including, but

not limited to the development of a PSSI corporate opportunity for Sewer AI, instead of using those corporate assets for their intended purpose.

101.    As a result of Defendants' actions, PPSI has suffered and will continue to suffer damages, all in an amount to be determined according to proof at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

**FOURTEENTH CAUSE OF ACTION**
**<u>UNJUST ENRICHMENT</u>**
**(Against the Defendant Directors and SEWER AI)**

102.    Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

103.    Defendant Directors and Sewer AI derived compensation, fees, opportunities and other benefits from PPSI and were otherwise unjustly enriched during the time in which the wrongful practices occurred, to the detriment of PPSI.  Defendant Directors and Sewer AI profited by engaging in the wrongful conduct set forth in the Complaint above, including, but not limited to wrongfully converting funds, property and opportunities rightfully belonging to PPSI.

104.    Defendant Directors and Sewer AI's enrichment is directly and causally related to the detriment of PPSI. These benefits were accepted by Defendant Directors and Sewer AI under such circumstances that it would be inequitable for it to be retained without payment.  As alleged above, Defendants breached their fiduciary duties and/or abused their positions of control to PPSI and Sewer AI unjustly took a corporate opportunity of PSSI without providing consideration to the Company, therefore Defendant Directors and Sewer AI are not justified to retain the benefits conferred upon them.

WHEREFORE, Plaintiff prays for relief as set forth below.

/////

Case No          - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

## **PRAYER FOR RELIEF**

WHEREFORE, as to Plaintiff's direct claims, Causes of Action 1-10, Plaintiff prays for judgment against Defendants, and where applicable against ProVen, jointly and severally, as follows:

    a.    A declaration of the rights, obligations, status, and legal relations of the parties;

    b.    Compensatory damages in an amount to be determined at trial;

    c.    Punitive damages on all claims permitted by law;

    d.    An accounting;

    e.    Interest, costs and attorneys' fees; and

    f.    Such other and further relief as is allowed by law and/or is equitable under the circumstances.

WHEREFORE, Plaintiff, as to the derivative claims brought on behalf of himself and PPSI, Causes of Action 11-14 prays for judgment, as follows:

    a.    Awarding compensatory damages against Defendant Directors and where applicable against Sewer AI, jointly and severally, in an amount to be proven at trial;

    b.    Awarding restitution, disgorgement of all illicit proceeds generated as a result of the wrongful conduct alleged herein against Defendant Directors and where applicable against Sewer AI, jointly and severally;

    c.    Awarding appropriate equitable relief, including any injunctive or declaratory relief necessary to change and/or reform PPSI's corporate governance, policies and culture;

    d.    Awarding punitive damages at the maximum amount permitted by law;

    e.    Awarding pre-judgment interest, as well as reasonable attorneys' fees and other costs; and

    f.    Awarding such other relief as this Court may deem just and proper.

/////

/////

/////

Case No    - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

1

## JURY DEMAND

2    Plaintiff, individually and derivatively on behalf of PPSI, demands a trial of all issues

3  by a jury of the maximum number.

4

5                                          Respectfully submitted,

6  Dated:  June 30, 2020              **LANG, RICHERT & PATCH, P.C.**

7

8                                  By: _____/s/_____
                                        Stan D. Blyth
9                                       Kimberly L. Mayhew
                                        Attorneys for Plaintiff,
10                                      CORBIN W. MARR

11  Dated:  June 30, 2020

12                                 By: _____/s/_____
                                        Dan Domozick, Esq.
13                                      Attorneys for Plaintiff,
                                        CORBIN W. MARR

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No        - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL

1

2 <u>**Declaration under Penalty of Perjury**</u>
(Code Civ. Proc., §§ 446, 2015.5)
3

4 I, Corbin W. Marr, declare:

5   1.   I am the Plaintiff both individually and derivatively on behalf of PPSI in the above-

6 entitled matter.

7   2.   I have read the foregoing Verified Complaint and know the contents thereof.

8   3.   The same is true of my own knowledge, except as to those matters which are therein

9 stated on information and belief, and, as to those matters, I believe it to be true.

10   Executed on, June 30, 2020, at New York, New York.

11   I declare under penalty of perjury that the foregoing is true and correct.

12

13 _____
(Signature of Party)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No        - In re Marr v. Pipe and Plant Solutions, Inc., et al.
COMPLAINT CORPORATE WASTE, BREACH OF FIDUCIARY DUTY; ABUSE OF CONTROL